UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
**GREENBELT DIVISION**

**CHRISTINA P. LIPPY, IN HER CAPACITY
AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF MICKEY LIPPY, DECEASED**

**AND**

**CHRISTINA P. LIPPY, AS SURIVING WIDOW
OF MICKEY LIPPY, DECEASED**

**AND AS**

**MOTHER & NEXT FRIEND OF
MADISON JADE LIPPY, SURVIVING MINOR DAUGHER
OF MICKEY LIPPY, DECEASED,**

       **Plaintiffs,**

vs.                                                            **Civil Action No.: 8:10-cv-00627**

**UNITED STATES OF AMERICA,**

    SERVE ON:

    United States Attorney General
    Department of Justice
    10th and Pennsylvania Avenue, NW
    Washington, DC  20530

    and:

    Rod J. Rosenstein
    United States Attorney
     for the District of Maryland
    36 S. Charles Street, 4th Fl.
    Baltimore, Maryland  21201,

        **Defendant.**

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD  21224
(410) 732-1315
rschulte@schultebooth.com

1

## **COMPLAINT**

COMES NOW, Plaintiff, Christina P. Lippy, as Personal Representative of the Estate of Mickey Lippy, in a survival action pursuant to Md. Code (2010), § 7-401 of the Estates and Trusts Article, and as Surviving Widow, and Mother and Next Friend of Madison Jade Lippy, Surviving Minor Child, of Mickey Lippy, Deceased, in a wrongful death claim pursuant to Md. Code Ann. (2010), § 3-901 *et seq*. of the Courts & Judicial Proceedings Article, by their counsel, Robert D. Schulte and Schulte Booth, P.C., and moves for judgment against the Defendant, United States of America, on the grounds and in the amounts set forth below:

## **JURISDICTION AND VENUE**

1. This action arises against the United States under the Federal Tort Claims Act (FTCA), Sections 2671-2680 of Title 28 of the United States Code (28 USC § 2671-2680).

2. This Court is vested with jurisdiction over this matter pursuant to 28 USC § 1346(b).

3. Defendant, United States of America, will be served through the United States Attorney General and the U. S. Attorney for the District of Maryland pursuant to Rule 4(i) of the Federal Rules of Civil Procedure.

4. Plaintiffs reside in Westminster, Carroll County, Maryland; the events prompting this Complaint occurred in the Southern Division of this Court.

5. Prior to the institution of this action and on or about February 19, 2009, Plaintiffs filed timely administrative claims with the United States Department of

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD 21224
(410) 732-1315
rschulte@schultebooth.com

2

Transportation, Federal Aviation Administration ("FAA") as required by 28 USC § 2675(a).

6. As of this filing, the FAA has not responded to Plaintiffs' claims by letter denying responsibility for the injuries at issue.

7. Plaintiff has elected to file suit in accordance with 28 USC § 2675.

## FACTUAL ALLEGATIONS

8. Plaintiff Christina Lippy, (hereafter Ms. Lippy), Surviving Widow of Mickey Lippy, Deceased, and Mother and Next Friend of Madison Jade Lippy, age two (2) years, Surviving Minor Child of Mickey Lippy, Deceased, both are primary beneficiaries of this action pursuant to Md. Code (2010), § 3-904(a) of the Courts & Judicial Proceedings Article.

9. Defendant, the United States of America, operates and maintains the Federal Aviation Administration ('FAA") which employs air traffic controllers to, among other things, facilitate and control aircraft in flight, on take-off and during landing, to provide necessary information and assistance to pilots and to control the airspace for safe passage by aircraft and the passengers thereon between various points located in the Washington D.C. metropolitan area.

10. At all times relevant hereto, the Maryland State Police Aviation Command ("MSP") operated a public use helicopter service on behalf of the citizens of Maryland under part 91 of the Federal Aviation Regulations to conduct, among other things, medical evacuation flights.

11. At all times relevant, Decedent Mickey Lippy was performing his job responsibilities as a flight paramedic on board an MSP public use helicopter operating in

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD 21224
(410) 732-1315
rschulte@schultebooth.com

3

positive controlled airspace under the jurisdiction and responsibility of the Federal Aviation Administration.

12. In the latter hours of September 27, 2008, MSP dispatched a helicopter bearing the FAA registration number N92MD ("the Aircraft"), call sign "Trooper 2," from its base at Andrews Air Force Base ("ADW") to a motor vehicle accident in the Waldorf, Maryland area for a medical evacuation flight.

13. The flight departed under Visual Flight Rules ("VFR") and visibility was otherwise very good at that time.

14. Arriving near the motor vehicle accidence scene, the Aircraft picked up two (2) accident victims and, along with its Pilot, one flight paramedic, and one field provider, set off for Prince George's Hospital Center (PGH), in Cheverly, Maryland.

15. The souls on board Trooper 2 the time were, respectively, Ashley Younger, Jordan Wells, Steven Bunker, Mickey Lippy and Tanya Mallard.

16. Due to deteriorating weather and the flight encountering instrument meteorological conditions ("IMC") where visibility was severely restricted or otherwise non-existent, the Aircraft was not able to land at PGH.

17. Requesting an instrument clearance from FAA air traffic controllers and diversion to ADW and an instrument approach to ADW runway 19R, the Aircraft proceeded in a southerly direction away from PGH and towards ADW.

18. The Aircraft traveled in airspace over the State of Maryland that is controlled by FAA air traffic controllers.

19. At all times relevant and during the approach to ADW, the pilot of Trooper 2,

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD 21224
(410) 732-1315
rschulte@schultebooth.com

4

Steven Bunker, was in direct contact with, and taking direction from, FAA air traffic controllers, all of whom were acting with in the scope of their employment with the FAA.

20. Pilot Bunker was provided weather information by FAA air traffic controllers during the course of the flight and on the approach to ADW.

21. The weather information provided to Pilot Bunker by FAA air traffic controllers was hours old and highly inaccurate, suggesting that visibility was much greater than that which actually existed at ADW at the time.

22. At all times relevant, FAA air traffic controllers were advised by Pilot Bunker that medivac patients were on board the Aircraft and that he had encountered instrument meteorological conditions necessitating their assistance to safely complete the flight.

23. During his approach to ADW, FAA air traffic controllers who rendered service to the Aircraft exhibited numerous operational and procedural deficiencies, including, but not limited to unresponsiveness, inattention, and poor radar vectoring.

24. These deficiencies were an unnecessary and unreasonable distraction to Pilot Bunker that increased his workload by requiring him to compensate for the substandard services provided to him by FAA air traffic controllers.

25. At just before midnight on September 27, 2008, Pilot Bunker reported to FAA air traffic controllers that he was not picking up the glideslope – the electronic navigation aid designed to provide the Aircraft vertical guidance in non-visual conditions to the runway 19R at ADW.

26. The air traffic controller at ADW's tower replied "it's (the glideslope) showing green on the panel but you're the only aircraft we've had in a long time so I don't really

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD  21224
(410) 732-1315
rschulte@schultebooth.com

know if it's working or not."

27.   Almost immediately thereafter, and at approximately three (3) minutes before midnight, Pilot Bunker requested an Airport Surveillance Radar (ASR) approach.

28.   A request for an ASR approach is a request from an aircraft to air traffic controllers to provide guidance to the runway using ground-based radar.

29.   The ADW FAA air traffic controller replied that she was not "current" to provide that service to Pilot Bunker and neither thereafter inquired as to the pilot's intentions nor did she render, or attempt to render, any other assistance to the Aircraft.

30.   There were no further communications, attempted or otherwise, with Trooper 2 by the ADW FAA air traffic controller who made no attempt to locate the Aircraft after she lost primary radar contact with it and after it failed to cross the threshold of the runway.

31.   The Aircraft impacted terrain sometime after its last communication with the ADW FAA air traffic controller, killing four (4) of the five (5) occupants on board, including flight paramedic Trooper First Class "TFC" Mickey Lippy, and grievously injuring the sole surviving passenger, Ms. Jordan Wells.

32.   TFC Lippy is survived by his wife, Christina P. Lippy, and infant daughter, Madision J. Lippy.

**COUNT I – WRONGFUL DEATH**
**NEGLIGENCE OF AGENTS OF THE UNITED STATES**
**CHRISTINE LIPPY & MADISION JADE LIPPY V.**
**UNITED STATES OF AMERICA**

33.   The allegations of the previous paragraphs are incorporated herein by reference.

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD 21224
(410) 732-1315
rschulte@schultebooth.com

6

34.     At all times relevant hereto, the air traffic controllers who were in contact with Pilot Bunker were acting within the scope of their employment with the United States and had a duty to provide for the safe passage of the Aircraft and its passengers through FAA-controlled airspace, and knew or should have known, that all aboard the Aircraft, including TFC Mickey Lippy, relied upon air traffic controllers to provide, and who had a duty to provide, certain accurate information, including but not limited to current weather conditions, and to provide all required and necessary assistance to pilots, especially to pilots of medivac helicopters with critical care patients on board, to warn about hazardous conditions and to assure passenger safety when danger to the aircraft is immediate and extreme or when the air traffic controllers knew or reasonably should have known that Trooper 2 and Pilot Bunker were encountering navigational and weather related difficulties and perceived mechanical malfunctions.

35.     The FAA air traffic controllers on duty the evening of September 27, 2008 and who handled Trooper 2 breached their duty of care to those on board the Aircraft by, without limitation: (1) failing to provide Pilot Bunker with the most accurate and relevant weather information under rapidly changing and deteriorating weather conditions; (2) failing monitor the approach of Trooper 2 on radar during its attempted landing at ADW; (3) failing to provide the Aircraft with a proper Instrument Flight Rules clearance and transponder code; (4) failing to provide assistance to the Pilot Bunker when it was known to the controllers that: (a) the Aircraft was traveling in very close proximity to secure and restricted flight zones in and around the D.C. Metropolitan area; (b) the pilot had already demonstrated distraction and difficulty during the approach; (c) the pilot had reported

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD 21224
(410) 732-1315
rschulte@schultebooth.com

7

experiencing unexpected and limited visibility; (d) the pilot had reported that he was experiencing perceived malfunctions with his navigational equipment; (e) that weather conditions were poor, unstable and rapidly changing; (f) the weather information provided by controllers to Pilot Bunker was highly inaccurate and stale; and (g) the ADW tower air traffic controller lacked situational awareness of the actual weather conditions at ADW at the time of the loss of Trooper 2.

36.  At the time of the attempted landing of Trooper 2 at ADW, FAA air traffic controllers had the duty, time, opportunity and means to provide additional and necessary assistance and warnings to Pilot Bunker but neglected to do.

37.  It was reasonably foreseeable that under the facts and circumstances of this case, the failure to provide proper assistance and ATC services to Pilot Bunker and the air traffic controllers' collective failure to follow all proper operational protocols and procedures, and specifically, the mandates of FAA Order 7110.65, was likely to result in significant harm to the passengers and others traveling on board the Aircraft.

38.  The acts and omissions of the air traffic controllers as set forth above were a proximate cause of, or otherwise a substantial causative factor resulting in, the loss of Trooper 2 and the resultant death of TFC Mickey Lippy, who died on impact when the Aircraft struck trees and subsequently the ground.

39.  As a direct and proximate result of the negligent acts and omissions of the employees of the United States of America, who were acting within the scope of their employment as FAA air traffic controllers, Christina P. Lippy, the Surviving Widow of Mickey Lippy, and Madison Jade Lippy, the Surviving Minor Daughter of Mickey Lippy, sustained

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD 21224
(410) 732-1315
rschulte@schultebooth.com

8

pecuniary loss, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of marital care, loss of parental care, loss of filial care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance and loss of education.

WHEREFORE, as to Count I, Plaintiffs respectfully requests the Court grant judgment in their favor against the United States of America in the sum of Fifteen Million Dollars ($15,000,000.00) plus pre-judgment interest and post-judgment interest and costs.

### COUNT II – SURVIVIAL ACTION
### NEGLIGENCE OF AGENTS OF THE UNITED STATES
### MICKEY LIPPY V. UNITED STATES OF AMERICA

40. The allegations of the previous paragraphs are incorporated herein by reference.

41. By failing to exercise reasonable care in their official duties, FAA air traffic controllers proximately caused the loss of Trooper 2 thereby resulting in the death and/or serious injuries of those on board the Aircraft.

42. Although he was killed on impact with the ground, TFC Lippy was privy to the communications between Pilot Bunker and FAA air traffic controllers; was aware of the difficulties being encountered by Pilot Bunker; was aware of the imminent crash of the Aircraft; was able to, and did experience, the initial impact sequence.

43. As a direct and proximate result of the negligence of FAA air traffic controllers' in failing to carry out their official duties with reasonable care, TFC Lippy experienced great

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD 21224
(410) 732-1315
rschulte@schultebooth.com

9

fear and apprehension, and therefore, conscious pain and suffering, before the final and fatal impact of Trooper 2 with the ground.

WHEREFORE, as to Count II, Plaintiff respectfully requests the Court grant judgment in his favor against the United States of America in the sum of One Million Dollars ($1,000,000.00) plus pre-judgment interest and post-judgment interest and costs.

Respectfully submitted:

**SCHULTE BOOTH, P.C.**

By: _____/s/_____
Robert D. Schulte (Fed. Bar. No. 24868)
3001 Elliott Street
Baltimore, Maryland  21224
(410) 732-1315

rschulte@schultebooth.com

Prepared by:
Schulte Booth, P.C.
3001 Elliott Street
Baltimore, MD  21224
(410) 732-1315
rschulte@schultebooth.com

10